Our last case for this morning is Weinmann v. McClone. Ms. Ford. May it please the Court, this is a relatively simple, single-issue case involving the question of whether or not unqualified immunity was correctly applied by Judge Griesbach when he entered an order granting, in part, and denying, in part, the defendant's motion for summary judgment on March 17, 2014. This case arises out of a situation that is unique, and... Well, it's not really unique, unfortunately, because there are going to be plenty of situations where police officers can be, sheriff's officers, law enforcement officers, could be in this situation. As I understand it, the only thing the district court did was say that he was concerned that there were enough factual disputes that were material that this fell into the realm of Johnson against Jones, and that the case simply, the qualified immunity issue simply couldn't be resolved as a matter of law. What the district court... It's not to say that at the end, I mean, it's certainly qualified immunity in any Johnson against Jones situation turns into something a little bit different from a right not to stand trial at all, because the facts require more proceedings, but it doesn't completely disappear. Well, what the district court did was not, the district court actually didn't indicate that more facts had to be developed. The district court stated Deputy McClellan employed deadly force against a suicidal individual who threatened no one. The district judge found that it was reasonably disputed whether Weisman ever took the gun off his lap, and that there was a material dispute about whether McClellan reasonably could have believed that the gun was pointed at him. Those things are unresolved. On this kind of appeal, we have to take it as established that the appellant could not reasonably have perceived that the gun was pointed at him. The issue on this appeal is not the first prong of the qualified immunity test. Indeed, it leaves your argument as an argument that as a matter of law, any police officer can shoot in cold blood anybody he knows has a gun. And that can't possibly be right. The facts here distinguish this case from that sort of scenario. But the problem is, as we need to take them, they don't. In the final analysis, when the facts are resolved, it may be that your client couldn't have, he might have reasonably thought the gun was going to be pointed at him in a second or something. But because of Johnson, we have to take the facts, as Judge Easterbrook just described them. And like Judge Easterbrook, I can't imagine a rule of law that says the police, I mean, I listened to the tape of this, the police officer panics, you hear the four shots instantly, the second he looks at the gun. And we can't have police officers shooting people in the face who have guns without some reason to support such an incredible use of deadly force. Well, what Deputy McClone was presented with was a situation where he actually walked into the room expecting- He knocked the door down. Right, knocked the door down expecting to save a life. No, he knew that there was a gun because that had been communicated to the 911 dispatcher. Sue had said she wasn't sure if it was loaded or not. So he knew it might be a loaded gun. He didn't go around to look through one of the other windows in the garage. He knocks the door down and instantly you hear the four shots go off. So he, and the gun, we have to assume, obviously facts will be determined. The gun is lying across his lap, Mr. Weinman's lap. And it's not pointing at Officer McClone. No, but it was elevated. Well, that's not much. That's, I think we're already in this disputed fact realm. Well, let me put it this way. The only thing that can happen from this appeal is that bad law will be made for your client. I wonder whether you really want to pursue it as opposed to getting the facts developed in the district court. Well. Johnson says we can't indulge any factual assumptions on your client's behalf on this appeal. All we can view is a pure legal issue. That's correct. And you're not going to like what the pure legal issue boils down to. Well, it seems to me that the plaintiff had the burden of pointing out clearly established law prohibiting the use of force under these circumstances. When a person is just sitting in a chair, I'm looking at the district judge's opinion at page seven. Sitting in his chair with the shotgun across his lap, resting on the wooden armrests or held just above them. And never pointing the gun at the door, never doing anything to make someone reasonably believe that the deputy was in threat of harm. I understand that that's, I'm sure that's not the way your client views it. I accept that. That's correct. But it's not how we have to look at the case right now. It's sort of for a later stage for your client to get his story out. It looks like my time is almost up. I will let you meditate on this, and if you wish to say more in rebuttal, that would be fine. Thank you. Thank you. On November 12th of 2007, Deputy McClellan was told by his dispatcher that there was a citizen locked in his garage in rural Waupaca County that he had access to a gun and that his wife thought he might be suicidal. The officer arrived at the garage within three minutes without announcing that he was there, without asking Mr. Weinman to come out. He kicked in the door and immediately shot four times at Mr. Weinman, who was sitting in a yard chair with the gun resting on the armrests. Well, that's your client's view. That's disputed no matter who is asserting what his view is. Taking the evidence in a light that was favorable to Mr. Weinman, that's his account. You are correct. For us to have appellate jurisdiction at the moment, that for the time being, I think has to be the way we look at the facts. It has to be the way we look at the facts. That's my understanding. That is absolutely correct. That is what the officer expected. That is what the officer found, and that is how the officer reacted. The court below Judge Griesbach properly applied the test of, I'm going to say, saucerer. I don't know if that's actually the pronunciation. Saucier. Saucier. It's cats. Versus cats in the two-prawn test. It's a state-of-the-art heritage in Wisconsin. Well, it's down in the fine state of Illinois. The properly applied the two-prawn test, objective reasonableness of the Fourth Amendment, and is there established law, and found that he could not grant summary judgment, and he didn't. And I would respectfully request that the judgment below be affirmed. All right. Thank you very much. Anything further, Ms. Ford? No, I'm simply going to rest on the arguments in my brief, other than to say that it seems to me that the approach that has to be taken here is to inquire as to whether or not the court properly held that Buchanan created clearly established law, or was clearly established law prohibiting Deputy McClellan's conduct. Now, obviously, Deputy McClellan has a different version of facts, but we have asked the court to assume for purposes of argument that Mr. Weinman's version of the facts is correct. Then the question becomes, did the plaintiff raise Seventh Circuit or Supreme Court authority, not a district court case, which is not precedential for purposes of argument. It's undisputed that Deputy McClellan felt that he was facing a current imminent threat of death. That testimony is undisputed. This is a Fourth Amendment doctrine, and the belief has to be objectively reasonable.     the fact that you've got a judge, does not authorize him to shoot everybody he sees. No, but the clearly established law applicable to this case has to be established in a particularized sense, rather than as an abstract or general, in an abstract or general sense. So you can't use just the general principle against the use of force and apply it in this case because you don't like the facts as they're presented by Mr. Weinman. The legal analysis has to be conducted, and qualified immunity requires that a clearly established law be identified that is sufficiently specific to the facts of this case, such that Deputy McClellan would have been put on notice that his sudden transformation from attempting to save a life, the sudden change to attempting to save his own life was unconstitutional. It's well-settled law, and I know bad facts make for bad law, and I hope that that will not be the case in this case. And that's all I have. Thank you very much. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will stand in recess.